## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SCOTT HOFF, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | CASE NO. 07-CV-304-FHM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## OPINION AND ORDER

Plaintiff, Scott Hoff, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1]  In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1]  Plaintiff's August 10, 2004 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration.  A hearing before an Administrative Law Judge (ALJ) was held June 13, 2006 .  By decision dated December 22, 2006, the ALJ entered the findings which are the subject of this appeal.  The Appeals Council denied review of the findings of the ALJ on March 30, 2007.  The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 48 years old at the time of the hearing. [R. 253].  He claims to have been unable to work since February 13, 2004, due to degenerative joint disease (hips), degenerative disk disease (back), 50% loss of use of the left arm and hand, emphysema, pancreatitis[2] and avascular necrosis.[3] [R. 46, 79, 95, 235, 258-263].  The ALJ determined Plaintiff has "problems with his right hip, lower back, and shortness of breath" but that none of the ailments are as severe as Plaintiff alleges and that none medically meet or equal any listing or combination of listings. [R. 17].  He found Plaintiff retains the Residual Functional Capacity (RFC) to perform sedentary exertional work with additional limitations. [R. 19].  Based upon the testimony of a Vocational Expert (VE), the ALJ found that Plaintiff's RFC did not preclude returning to his past relevant work (PRW) as a night auditor. [R. 17].  As an alternative finding, the ALJ determined that there are other jobs available in significant numbers in the national and local economy that Plaintiff could perform.  Based on those findings, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act. [R. 18].  The case was thus decided at step four, with an alternative finding at step five, of the five-step

---

[2]  Pancreatitis is acute or chronic inflammation of the pancreas, due to autodigestion of a pancreatic tissue by its own enzymes. Dorlands' Ill. Med. Dictionary, 28th ed. (1994) 1218.

[3]  Avascular Necrosis: the sum of the morphological changes indicative of cell death due to deficient blood supply; called also osteonecrosis: death of bone. Dorlands' at 1103, 1202.

2

evaluative sequence for evaluating whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ erred: 1) by formulating an RFC assessment that failed to include all of Plaintiff's limitations; and 2) by determining Plaintiff can return to his past work based upon his RFC. [Dkt. 19, p. 4].   For the following reasons, the Court finds this case must be reversed and remanded to the Commissioner for reconsideration.

## **Medical Evidence**

Plaintiff claims he was injured in a car-pedestrian or car-bicycle accident in 2000 which resulted in chronic back pain radiating to the right leg and also causes stiffness and deformity of the left arm and hand. [R. 271-272].  The record contains evidence of medical treatment from July 15, 2002 to April 16, 2004 for chronic pain in the back, neck, leg and arm. [R. 158-182].  Plaintiff claims his disability commenced on August 10, 2004. [R. 46, 79, 235].

The record indicates Plaintiff was seen by Vaniunh Pyle, M.D., his treating physician at the OU Adult Medicine Clinic, on September 8, 2004, for complaints of new left sided back and hip pain. [R. 156-157].  The doctor observed an externally rotated hip and referred Plaintiff for x-rays and MRIs of the back and pelvis. [R. 157].  X-rays conducted September 10, 2004, showed severe osteoarthritis[4] of the right hip and

---

[4] Osteoarthritis is a noninflammatory degenerative joint disease, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins and changes in the synovial membrane. It is accompanied by pain (usually before prolonged activity) and stiffness (particularly after prolonged activity).  Called also degenerative joint disease. Dorlands' at 1199.

suggested superimposed avascular necrosis of the right femoral head. [R. 194]. The September 22, 2004, MRI of the lumbar spine indicated mild degenerative lumbar disc disease. [R. 196-197].  The MRI of the pelvis revealed both hips were abnormal, with marked deformity of the right femoral head consistent with aseptic necrosis,[5] appearing to be superimposed upon some degenerative joint disease. *Id.*   There was also evidence of less severe aseptic necrosis involving the left femoral head. *Id.*   The radiologist's impression was: bilateral femoral aseptic necrosis, right worse than left; large right joint effusion; and mild degenerative joint disease of the right hip. *Id.*

At Plaintiff's follow-up appointment on October 6, 2004, Dr. Pyle noted Plaintiff's history of chronic back pain for which he took Lortab[6] and referred him for an orthopedic consult. [R. 154-155].  Dr. Pyle recorded a history of smoking 1/2 pack per day and occasional drinking of alcohol. [R. 154].

Plaintiff was seen by Troy Martin, M.D., on December 15, 2004, who reviewed Plaintiff's MRI reports, noted Plaintiff's chronic back pain was "well controlled with Lortab" and discussed the importance of diet and exercise for treatment of hypertension. [R. 152].  He reported Plaintiff had decreased smoking tobacco to 1/2 pack per day and he discussed smoking cessation with Plaintiff noting: "2 mos prior to surgery to be helpful." [R. 153].

Plaintiff was examined by G. Bryant Boyd, M.D., on December 21, 2004. [R. 116-122].  Dr. Boyd observed a "somewhat abnormal" gait with the right foot and lower leg

---

[5]  Aseptic necrosis: increasing sclerosis and cystic changes in the head of the femur. Dorlands' at 1103.

[6]  Lortab is an opioid analgesic and is indicated for the relief of moderate to moderately severe pain. Physicians' Desk Reference (PDR) 53rd ed. (1999) 3162.

externally rotated. [R. 117].  He thought Plaintiff's stability was "probably okay but he states he needs to use a cane, that was not prescribed by anyone, to give him further stability. I believe that he is certainly safe with his cane." *Id.*  Plaintiff was able to use his hands for gross and fine manipulation. There was no evidence of muscle wasting, asymmetry or fasiculations in the hand, thighs or calves.  He demonstrated decreased motion for internal rotation of the right hip that caused pain and positive straight leg raising on the right at about 30 degrees which appeared to be due to hip pain. *Id.*  He was able to arise from his chair and get on the exam table without assistance although he did so "somewhat slowly."  Dr. Boyd's impression was: 1) Abnormal blood pressure; 2) Hip pain with decreased range of motion; 3) Abnormal gait; 4) Osteoarthritis of the right hip; 5) Probable avascular necrosis of the right hip; 6) Surgical scar over left wrist with normal range of motion and function of left hand and wrist; and 7) Otherwise normal physical examination. [R. 117-118].

On January 21, 2005, Plaintiff was again seen by Dr. Pyle. [R. 150-151].  Dr. Pyle encouraged a low sodium diet, a limited exercise program due to hip avascular necrosis and chronic pain. [R. 150]. He started medication for hypertension and Lortab was continued for chronic low back pain. *Id.*  Plaintiff was referred for hyperlipidemia screening and general health lab work up. *Id.*  Dr. Pyle also noted on that date that Plaintiff wanted to try to quit smoking, would like to try a patch and that he "may consider surgery when SS kicks in." [R. 150].

When he was examined on March 11, 2005, Plaintiff complained that the hypertension medication made him dizzy and made him fall two times. [R. 148-149].

5

Because of his risk for falls, his medication was changed. [R. 148].   Dyspnea[7] was thought to be due to smoking but a chest x-ray was ordered because of Plaintiff's history of hypertension. Plaintiff advised he had decreased the amount he was smoking. *Id.*  The March 11, 2005, x-ray results indicated severe emphysema. [R. 191]. An EKG conducted on April 15, 2005 was normal. [R. 221-224].

On April 22, 2005, Dr. Pyle noted Plaintiff was tolerating his medication.  He was down to two cigarettes a day and did not want to get a patch. [R. 146, 217].  Dr. Pyle opined Plaintiff's dyspnea on exertion was likely due to chronic smoking and that he would try to start Zyban.[8]  Pulmonary Function Studies were conducted on July 5, 2005. [R. 198-204].  No interpretation of those studies appears in the record.

Dr. Pyle reported on July 14, 2005, that Plaintiff had recently been discharged from the hospital for treatment of pancreatitis and that he had broken out in a rash which was thought to be a drug reaction. [R. 215-216].  Plaintiff gave a history of smoking and of a "pint of vodka split with friend every 3 days." [R. 215].

On August 18, 2005, Plaintiff told Dr. Pyle he "drank a little" after the first hospitalization and was readmitted for treatment July 25th through July 27th. [R. 213-214]. He had consumed no alcohol since then. [R. 213].  His rash, possibly related to pancreatitis, was improved substantially after treatment with Pepcid.[9] *Id.*  Plaintiff stated the smoking patches had made him "want to smoke more." [R. 213].  Dr. Pyle talked

---

[7]  Dyspnea is difficult or labored breathing. Dorlands' at 518.

[8]  Zyban (initially developed and marked as an antidepressant) is a non-nicotine aid to smoking cessation. See drug information online at: http://www.fda.gov/cder/foi/label/2007/020711s0lbl.pdf.

[9]  Pepcid is indicated for inhibition of gastric secretion. See drug information online at: http://www.fda.gov./cder/foi/label/2007/019462s034,018519s913kbk,odf,

about the need to abstain from alcohol and smoking.  He noted Plaintiff was waiting for Zyban. *Id.* Under his diagnosis of degenerative joint disease with avascular necrosis of right femoral head, Dr. Pyle wrote: "Trying to get disability for surgery." [R. 213].

Plaintiff reported another fall off the porch on September 29, 2005.  [R. 211-212]. He also advised that cold weather increased osteoarthritis symptoms.  Regarding his hip pain due to avascular necrosis, Plaintiff was "trying to get disability."  He was observed to be walking with a cane. [R. 212].  His pancreatitis had resolved.  He was again counseled to quit smoking. [R. 211].

On November 21, 2005, Plaintiff told Dr. Pyle that he had pain in his neck and shoulders and that his hips continued to hurt, "[left] side also now but no severe [increase]." [R. 209-210].  He advised his court date for disability was in the next 20 days, stating:  "only other way to get [right] hip replacement is remarry wife to get on her insurance." [R. 209].  Dr. Pyle added some muscle relaxers to Plaintiff's medications and advised of the increased risk for falls. *Id.*

A treatment notation in the record indicates Plaintiff's back hurt more than his hip on February 2, 2006. [R. 207-208].  He was still walking with a cane and reported no falls since his previous visit. [R. 207].  Dr. Pyle talked to Plaintiff regarding the cost of medication and he continued counseling on smoking cessation, writing: "Discuss if have hip surgery in future will need quit before surgery." *Id.*

7

An RFC assessment by a non-examining agency consultant dated February 7, 2005, appears in the record. [R. 137-144].[10]  The consulting physician found Plaintiff was limited to: lifting and/or carrying 10 pounds occasionally,[11] less than 10 pounds frequently; standing and/or walking (with normal breaks) for a total of at least 2 hours in an 8-hour workday; sitting (with normal breaks) for a total of about 6 hours in an 8-hour workday; and unlimited pushing and/or pulling. [R. 138].

### The ALJ's Decision

The ALJ determined Plaintiff's "complaints of high blood pressure, the right ankle and the depression and anxiety are non severe." [R. 14].  Plaintiff has not challenged those findings. [Dkt. 19].

The ALJ stated that "there are medical findings of: problems with his left hand, his back, his hip, his left wrist, his left elbow, his right ankle, high blood pressure, shortness of breath and pancreatitis, which could place substantial limitation, unless otherwise noted in the opinion, upon claimant's basic work activities." [R. 14].  After discussing the evidence, the ALJ found that Plaintiff has "problems with his right hip, lower back and shortness of breath." [R. 17].  He determined that Plaintiff's impairments do not meet or equal the Listings. [R. 14].  He found that Plaintiff retains the RFC to lift/carry ten pounds; stand/walk two hours out of an eight hour workday at 30 minute

---

[10]  The final page of the assessment form which provides blank space under Section IV for additional comments to be recorded and a line for the physician to sign the document, is missing from the administrative record. [Dkt. 14].  If either party contends the omitted page [R. 144] is necessary for purposes of the Court's review and would impact the Court's opinion in this case, counsel is directed to so advise the Court within ten (10) days of the filing of this order.

[11]  "Occasionally" means occurring from very little up to one-third of the time. Social Security Ruling (SSR) 83-10, 1983 WL 31251, *5.

intervals; sit for six hours out of an eight hour workday at 30 minute intervals; occasionally climb ramp and stairs with no climbing of rope, ladder or scaffolds; occasionally bend, stoop, squat, kneel, crouch and crawl; occasionally operate foot controls, push/pull with left upper extremity and twist torso; slightly limited fingering, feeling and grasping; must avoid dust, fumes and gases, temperature extremes, dampness, fast and dangerous machinery, rough and uneven surfaces and unprotected heights. [R.14].

The ALJ acknowledged Dr. Boyd's findings, the x-ray and MRI results showing osteoarthritis and mild degenerative joint disease of the right hip, aseptic necrosis of both hips, right worse than left, and the chest x-ray indicating emphysema. [R. 15].  He also took note of Plaintiff's claims of impairments in his disability reports and in his testimony. [R. 15].

The ALJ stated he had considered the evidence of record and found Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [R. 16].

Citing Dr. Boyd's findings of normal range of motion and function of the left hand and wrist and Dr. Reddy's report of full range of motion of the left hand and wrist with no problems manipulating small objects or grasping tools, he rejected Plaintiff's claim of deficits in the use of his left hand and arm. [R. 16].  He also pointed to Dr. Reddy's report as evidence that is inconsistent with Plaintiff's claim of disabling back pain. [R. 16].

9

The ALJ acknowledged the need for hip replacement surgery but said Plaintiff "was informed that before they would perform the surgery, he would have to quit smoking." [R. 16].  He noted that smoking cessation had been discussed with Plaintiff on numerous occasions and that, despite the diagnosis of emphysema, Plaintiff continues to smoke. [R. 16].  He also noted the "several occasions" that alcohol use was discussed with the claimant and he reported that Dr. Reddy had detected alcohol on his breath when he was examined on July 31, 2006.  Then he wrote:

> It would be reasonable to assume that if a person is in disabling pain from a condition that he would be amenable to almost all forms of treatment to obtain relief.  The claimant stated that it was financial reasons for his lack of surgery.  However, the records indicate it is the claimant's refusal to quit smoking that has delayed the surgery.  Such a situation impacts the claimant's credibility.  It also indicates that the claimant's pain is not as severe as he alleges, since he prefers to continue smoking to having his surgery.

[R. 16].  He reported Plaintiff "has attempted to down play or hide, his substance abuse." *Id.*  This, he said, is the equivalent of exaggerating symptomatology. *Id.* He suggested that treating and examining physicians could not rely on Plaintiff's representations to make correct conclusions about "the various conditions" and that "[s]uch attempts, as performed by the claimant, color all of the evidence and raise serious doubts about the value and credibility of not only his testimony but also his presentations to his physicians." *Id.*

The ALJ stated he had given "considerable weight" to the opinion evidence from the OU Internal Medicine Clinic. [R. 17].  He gave less weight to the agency's February 7, 2005 RFC assessment. [R. 17].

10

Citing the VE's testimony, the ALJ determined Plaintiff's RFC eliminates all Plaintiff's past jobs except for the night auditor in his step four finding. [R. 17].  For his alternative step five finding, the ALJ stated that other available jobs are "cashier, sedentary, semi-skilled with an SVP of 3, DOT#211-462-026, 6000 in Oklahoma and 450,000 in nation and auction clerk, sedentary, semi-skilled with an SVP of 3." [R. 18]. He added: "several unskilled jobs which the claimant could perform such as an assembly worker, DOT#732-684-062, 2000 jobs in Oklahoma and 156,000 in nation." [R. 18].

## Discussion

The record clearly establishes that Plaintiff has medically determinable impairments of: mild degenerative disk disease; aseptic or avascular necrosis superimposed upon some degenerative joint disease (osteoarthritis) of the right hip; less severe aseptic necrosis of the left hip; and severe emphysema.  The record also contains objective medical evidence indicating that these impairments cause functional limitations and pain.  Thus, Plaintiff met his burden of proof at step two to make a threshold showing that his medically determinable impairments or combination of impairments significantly limit his ability to do basic work activities. See 20 C.F.R. 404.1520(a)(ii).[12]

---

[12] The ALJ never clearly identified Plaintiff's severe impairments in a definitive finding at step two even though he found Plaintiff had "medically determinable impairments [that] could reasonably be expected to produce the alleged symptoms." [R. 16].  Nor did he specify what "alleged symptoms" were related to Plaintiff's avascular necrosis, although he did mention Plaintiff's complaints of chronic pain in the lower back.  Upon remand, the ALJ is urged to clarify his findings with regard to the impairments he deems are severe at step two and the limitations imposed by those impairments.

Once a claimant has established a pain-producing impairment by objective medical evidence, the ALJ is required to consider subjective testimony about the extent of the claimant's pain and resulting limitations. See 20 C.F.R. § 404.1529(c)(s); *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987) (ALJ considers factors such as the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.).

In this case, the ALJ recognized that Plaintiff is in need of hip replacement surgery because of osteoarthritis and avascular necrosis of the right hip. [R. 16]. However, he did not accept Plaintiff's claim of severe hip pain on the basis that Plaintiff had refused to stop smoking and that smoking cessation was necessary in order for Plaintiff to have that surgery. [R. 16]. The ALJ did not cite any portions of the record as support for this finding. Instead, he merely stated that: "Smoking cessation has been discussed with the claimant on numerous occasions." [R. 16]. The Court finds the reason given by the ALJ for discrediting Plaintiff's claim of severe hip pain is not supported by the record.

It is true that Plaintiff's treating physicians counseled Plaintiff at almost every treatment session to stop smoking and that they explored treatment methods to help him stop smoking completely. It should be noted here that the only time Plaintiff "refused" treatment was when he declined a nicotine patch after he had experienced what he perceived to be an increased urge to smoke while using the patch and had

12

already tapered down from two packs per day to two cigarettes per day. [R. 213, 217].

The only treatment notations in the record that remotely connect smoking with Plaintiff's

need for hip replacement surgery are suggestions that smoking cessation would be

"helpful" before surgery. [R. 153, 207].  There is no indication that surgery was delayed

<u>because</u> of Plaintiff's failure to stop smoking.  Rather, the treating physicians repeatedly

reported Plaintiff was filing for disability benefits in order to have the surgery. [R. 150,

209, 211-212, 213].  This medical evidence supports Plaintiff's testimony that he had

not undergone hip replacement surgery because he could not afford it. [R. 264].  The

ALJ did not question Plaintiff regarding the effects of his smoking on his eligibility for hip

replacement surgery.  An ALJ has a duty to learn the claimant's version of the facts by

asking necessary questions at the hearing. *See Thompson v. Sullivan*, 987 F.2d 1482,

1490 (10th Cir. 1993) (finding credibility determination not based upon substantial

evidence because ALJ could not consider several of the *Hargis/Huston* factors[13] as

claimant was not asked necessary questions at the hearing to obtain some of that

information).

The Commissioner's brief proffers an explanation of how the record supports the

ALJ's credibility determination and RFC findings, including a recitation of Plaintiff's daily

activities and analysis of Dr. Reddy's objective medical findings.  However, this analysis

must be conducted and explained in writing by the ALJ. *See Allen v. Barnhart*, 357 F.3d

_____

[13]  When determining the credibility of pain testimony, the ALJ should consider such factors as "the levels of medication and their effectiveness,, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are preculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence." *Thompson*, 987 F.2d at 1489 (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (quoting *Huston v. Bowen*, 838 F.2d 1125 (10th Cir. 1988)).

1140, 1145 (10th Cir.2004) ("That the record contains evidence that may support a specific factual finding cannot substitute for the finding itself."); *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (the Court cannot make factual determinations on the ALJ's behalf).  The only reason the ALJ gave for not believing Plaintiff's claims of severe pain due to osteoarthritis and avascular necrosis was that Plaintiff refused to quit smoking and that smoking cessation was a precondition to surgery.  The factual record does not support that reason.

The credibility issue was critical to the determination of disability in this case. Because the ALJ's credibility determination with regard to Plaintiff's claims of severe pain caused by his avascular necrosis impairment is not properly grounded in the evidence, the Court cannot say the ALJ's credibility determination is supported by substantial evidence.

Additionally, the Court finds that the ALJ's step four and step five findings are infirm.  The record contains no description of the demands of Plaintiff's past work as a night auditor. *See* Winfrey *v. Chater*, 92 F.3d 1017, 1023-26 (10th Cir.1996) (ALJ must develop record with factual information regarding actual work demands of PRW and whether, given RFC, claimant could meet those demands);  20 C.F.R. § 404.1520(e); Soc. Sec. Rul. 82-62 (ALJ required to make findings regarding RFC, physical and mental demands of prior jobs and ability of claimant to return to past job given his RFC). The jobs listed by the ALJ in his alternative step five finding were identified by the VE in response to the first hypothetical presented by the ALJ at the hearing. [R. 278-281]. That hypothetical presented a claimant with an RFC for lifting and carrying to ten pounds, stand and walk two hours in  eight and to sit six hours in eight <u>with normal</u>

14

breaks. [R. 278]. (emphasis added).  The second hypothetical contained an RFC to lift and carry to ten pounds, stand and walk two hours in an eight <u>at a 30-minute interval</u> and sit six hours in eight <u>at a 30 minute interval</u> and additional limitations, inter alia, for working with his hands. [R. 281]. (emphasis added).  The VE testified that the RFC in the second hypothetical "would eliminate the assembly jobs and the hand working occupations" she had listed in her response to the first hypothetical. [R. 282].  She identified unskilled election clerk and call-out operator as jobs available for such a person. [R. 282-283].  The RFC set forth in the ALJ's decision matches the RFC that was presented to the VE in the second hypothetical. [R. 14].  The ALJ listed the assembly jobs but did not include the election clerk and call-out operator jobs as available jobs in his written decision.  It is also not clear which jobs the VE was describing by "hand working occupations."  Upon remand, the ALJ should develop the record with regard to Plaintiff's PRW as night auditor and should revisit his step five findings and readdress the issue of numerical significance regarding jobs available that Plaintiff can perform with his RFC. *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (finding as to whether number of jobs identified by VE is significant is fact-specific, requires individualized evaluation and is ultimately left to ALJ's common sense determination).

The Court finds the ALJ failed to provide a proper basis to discount Plaintiff's subjective allegations of disabling nonexertional limitations.  Accordingly, this case is REVERSED AND REMANDED for reconsideration. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (holding that ALJ must closely and affirmatively link credibility findings to substantial evidence).  Upon remand, the ALJ should clarify his step two

findings with regard to the "problems" that are severe medical determinable impairments.  He is to then set forth specific findings as to the degree of pain and/or other limitations caused by those impairments and their impact upon Plaintiff's RFC. In doing so, he must link the factual findings underlying his credibility determination to substantial evidence in the record.[14] *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005) (internal quotation omitted).  In remanding this case, the Court does not dictate any result, but does so simply to assure that the correct legal standards are invoked in reaching a decision based on the facts of this case. *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

SO ORDERED this 25th day of July, 2008.

*Frank H. McCarthy*

**FRANK H. McCARTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[14]  Although the ALJ acknowledged Dr. Boyd's objective findings of hip pain with decreased range of motion he did not discuss how that evidence impacted his credibility analysis. [R. 116-122]. Nor did he mention Dr. Boyd's observance of abnormal gait or the evidence from Plaintiff's treating physicians corroborating findings of decreased range of motion and hip pain in his decision. [R. 208, 210, 212, 218].